**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

**TERVES, LLC, a Nevada limited liability company,**

**Plaintiff,**

**v.**

**MAGNESIUM MACHINE, LLC, an Oklahoma limited liability company,**

**Defendant.**

**Case No. CIV-23-133-JD**

**DEFENDANT MAGNESIUM MACHINE, LLC'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Magnesium Machine, LLC ("Magnesium Machine") hereby replies in support of its *Motion to Dismiss* as follows:

## OVERVIEW

Terves's knows the preclusion doctrines are applicable here—It even advocates for the Court to apply issue preclusion (but only to the extent it helps Terves). At the risk of sounding trite, what's good for the goose is good for the gander. Because Terves seeks to apply preclusion to prevail on its '653, '740, and '151 Patent claims, it must live with the fact that the same doctrines apply to bar its claims as asserted against Magnesium Machine. The *Complaint* must be dismissed in its entirety.

### 1. TERVES IS NOT ENTITLED TO A REDUX OF ITS '653 AND '740 PATENT CLAIMS.

Inherent in Terves's argument is the recognition that issue preclusion bars any claims that were at issue in the Ohio Lawsuit. *See Terves' Opposition to MMP's Motion to*

*Dismiss*, at 5-7 (hereinafter, "*Terves's Response*"). And, Terves does not dispute that it used Magnesium Machine's sales as the measure of its damages in the Ohio Lawsuit. *See also Memorandum Opinion and Order* at 1, *Terves LLC v. Yueyang Aerospace*, No. 1:19-cv-1611-DCN (Nov. 9, 2022) (noting the Ohio jury "considered evidence including the value of the infringing materials and the MMP products manufactured from these materials, and were able to take these into account in formulating their judgment and award").

Terves's defense, then, turns on its new claim that the Ohio Lawsuit only addressed damages through July 1, 2021. First, Terves's cited authority does not support that conclusion. Terves selectively quotes the *Charge of the Court*, which specifically instructed the Ohio jury as follows:

> The damages you award must be adequate to compensate Terves for the infringement. Your damages award should put Terves in approximately the same financial position that it would have been in had the infringement not occurred. Terves has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Terves establishes that it more likely than not has suffered.

*See Charge of Court* in the Ohio Lawsuit, at 741, Exhibit 2 to *Terves's Response*. The Ohio Court's *Charge* did not contain a governing temporal limitation. And when the Ohio Court did address the temporal limitations of Terves's claim, it was only because Terves failed to present any evidence after the given date. Indeed, as the Ohio Court correctly noted, "Terves ha[d] the burden to the establish the amount of its damages by a preponderance of the evidence." *Id*. If Terves did not do that, for whatever reason, it does not give them *carte*

*blanche* to bring duplicative lawsuits on the same issues it did not substantiate in its prior actions.

Terves suggests it gets a do over of its Ohio Lawsuit claims because it failed to obtain the evidence there necessary to prove some of its alleged damages. *See Terves's Response*, at 5-6. But, Terves made the strategic decision not to name Magnesium Machine in its Ohio Lawsuit. And, Terves chose to proceed to trial despite (as it claims now) not having access to records it thought necessary to make its case (and apparently without availing itself of any remedies to obtain those records). *Terves's Response*, at 3-6. Of course, Terves buries the fact that it ultimately did receive supplemental information regarding sales relevant to its Ohio Lawsuit damages claim but decided not to use them. *Terves's Response*, at 6. Terves did not seek leave of the Ohio Court to present the supplemental information at trial, which leave the Ohio Court would almost certainly have given considering the purported timing of such information's production. *Terves's Response*, at 6. For the avoidance of any doubt, Terves had every **opportunity** in the Ohio Lawsuit to litigate its full damages claim and, for whatever reason, Terves now says it chose not to do so. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1243-44 (10th Cir. 2017) (noting that a full and fair opportunity applies "only where the requirements of due process were not afforded"). To whatever extent Terves now regrets its strategic decisions, that does not entitle them to a second bite at the apple—The doctrine of issue preclusion counsels that Terves must live with its choices in the Ohio Lawsuit.

More importantly, the Ohio Court disagrees with Terves's assessment of what damages were awarded in the Ohio Lawsuit. In ruling on Terves's attempt to enforce its

permanent injunction against Magnesium Machine, the Ohio Court stated: "Terves claims that Defendants Ecometal and Yuan made a sale of 100 tons of infringing material to [Magnesium Machine] prior to the trial in this case. The judgment against the Defendants included damages Terves suffered as a result of the sale of this infringing material."[1] *See Memorandum Opinion and Order* at 1, Exhibit 7 to *Defendant's Motion to Dismiss*. The Ohio jury evaluated Magnesium Machine's sales in its assessment of the damages it awarded to Terves and, in the view of the Ohio Court, those damages encompassed all of the sales of infringing product Terves complains of in this matter. *Id*. If Terves disagrees with the Ohio Court on this point, it must take that up with the Ohio Court (or on appeal) rather than seeking to selectively re-litigate its damages here in hopes of obtaining a favorable double recovery. The *Complaint* should be dismissed.

**2. TERVES CANNOT HIDE BEHIND ITS "GENERAL RULE" BECAUSE ITS '151 PATENT CLAIMS ARE WHOLLY DUPLICATIVE OF THOSE IT ASSERTED WITH RESPECT TO THE '653 AND '740 PATENTS.**

First, Terves's argument that the '151 Patent is somehow different from the '653 and '740 Patents is inconsistent with Terves's own allegations in its *Complaint*. *See Complaint* at ¶ 75 (stating "The Court in the Ecometal Case found that MMP's product infringes Claim 15 of the '653 patent" and discussing similarities between the '151 patent and the '653 patent); *Complaint* at ¶ 77 (stating "MMP's Infringing Materials meet the

[1] The Ohio Court's finding here also directly contradicts Terves's suggestion that the sales of allegedly infringing product it complains of here were not essential to the Ohio judgment. These sales were the basis for the Ohio award and plainly an essential component of that jury's assessment of damages (which, after all, was the only thing the Ohio jury was tasked with determining).

requirements of" the '653 patent "and therefore infringe[s] the '151 patent"). Indeed, Terves touts the nearly identical substance of the patents to support its theory of liability on the '151 Patent, expressly arguing that infringement of one is infringement of the other. *See Complaint* at ¶ 77. And yet, Terves feigns disbelief when Magnesium Machine draws the natural conclusion based on the same premise—That the '151 Patent so fully overlaps the '653 and '740 Patents that Terves was bound by law to have brought its claims under the former when it raised its claims with respect to the latter.

Hoping to avoid the inevitable, Terves invokes the Federal Circuit's purported "general rule" in *Kearns v. General Motors Corp.*, 94 F.3d 1553 (Fed. Cir. 1996). It is true *Kearns* decided that where "each patent establishes an independent and distinct property right," there should be no finding of claim preclusion with respect to "patents that had not been included in the [prior] suit, were not before the [prior] court, and were not part of the [prior] judgment." *Id*. at 1557. But where "the first case was fully litigated on its merits and the same issues were raised in the second case" with respect to a separate patent, preclusion is appropriate because the "second cause of action could have been included with the first." *Id*. at 1556. Contrary to Terves's suggestion, *Kearns* does not stand for the proposition that all patents are inherently unique and therefore that preclusion can never apply to bar a patent claim. Instead, *Kearns* simply requires a review of the patents at issue to determine whether they give rise to distinct claims or, instead, sufficiently overlap as to give rise to claim preclusion.

Terves failed to highlight any distinctions between the '151, '653, and '740 Patents (because there are none). To the contrary, Terves champions the overlap among the Patents

right up until it isn't helpful for its arguments. *Complaint* at ¶¶ 73-77. To be sure, a quick perusal of the '653, '740, and '151 Patents proves that the latter is nothing more than a recasting of the former. The Patents are all children of the same parent filing, and the first 17 pages of the '653 and '151 Patents are exact duplicates of one another. What's more, despite Terves's suggestion (without any supporting reference) that the claims of the Patents may differ while their underlying support does not, a quick glance at claims of the '740 and '151 Patents make it clear they are substantively identical:

| **'740 Patent, Claim 2** | **'151 Patent, Claim 1** |
| --- | --- |
| A dissolvable magnesium composite that at least partially forms a ball, a frac ball, a tube, a plug or other tool component that is to be used in a well drilling or completion operation, said dissolvable dissolvable magnesium composite includes in situ precipitate, said dissolvable magnesium composite comprising a mixture of magnesium or a magnesium alloy and an additive material, said magnesium composite includes greater than 50 wt. % magnesium, said in situ precipitate includes said additive material**, said additive material includes one or more metal materials selected from the group consisting of a) copper wherein said copper constitutes 0.1-35 wt. % of said dissolvable magnesium composite, b) wt. % nickel wherein said nickel constitutes 0.1-23.5 wt. % of said dissolvable magnesium composite, and c) cobalt wherein said cobalt constitutes 0.1-20 wt. % of said dissolvable magnesium composite, said dissolvable magnesium composite has a dissolution rate of at** | A downhole well component at least partially formed of a dissolvable magnesium cast material, said dissolvable magnesium cast material comprising a mixture of magnesium and additive material or a **mixture of magnesium alloy and additive material, said additive material includes i) copper wherein said copper constitutes 0.1-35 wt. % of said dissolvable magnesium cast material, ii) nickel wherein said nickel constitutes 0.1-24.5 wt. % of said dissolvable magnesium cast material, and/or iii) cobalt wherein said cobalt constitutes 0.1-20 wt. % of said dissolvable magnesium cast material, said dissolvable magnesium cast material** includes galvanically-active in situ precipitate, said galvanically active in situ precipitate includes said additive material**, said dissolvable magnesium cast material has a dissolution rate of at least 40 mg/cm2/hr. in 3 wt. % KC1 water mixture at 90° C.,** said downhole well component includes one or more components selected from the group |

| **least 75 mg/cm2/hr. in 3 wt. % KC1 water mixture at 90° C.** | consisting of a sleeve, a ball, a frac ball, a hydraulic actuating tooling, a tube, a valve, a valve component, and a plug. |
| --- | --- |

*See* Exhibits 2-3 to *Complaint* (emphasis added).

There is nothing new or novel about the claims in the '151 Patent. Accordingly, whatever claims Terves may have had arising out of the '151 Patent should have been litigated alongside its claims arising out of the '740 Patent. *See MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). Terves's claims arising out of the '151 Patent must be dismissed as precluded.

## CONCLUSION

For the foregoing reasons, Defendant's *Motion to Dismiss* should be granted and the *Complaint* should be dismissed in its entirety. In the alternative, Defendant requests this matter be stayed pending final determination of the Federal Circuit Appeals, *inter partes* review[2] of the '151 patent, and the KLX Lawsuit.

[2] As Terves pointed out, Magnesium Machine inadvertently referred to *inter partes* reexamination instead of *inter partes* review in its *Motion to Dismiss*. The misnomer does not change the reality that this matter should be stayed pending the outcome of the patent review process.

Dated: April 4, 2023.

Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*/s/ Daniel V. Carsey*
Daniel V. Carsey, OBA No. 21490
Michael H. Smith, OBA No. 19222
Bryan R. Lynch, OBA No. 33559

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
Telephone: (405) 553-2313
Facsimile: (405) 553-2855
dcarsey@hallestill.com
mhsmith@hallestill.com
blynch@hallestill.com

**ATTORNEYS FOR PLAINTIFF MAGNESIUM MACHINE, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2023, a true and correct copy of the above and foregoing was electronically served using the CM/ECF system to all CM/ECF registrants appearing in the above-styled matter.

____________________________________
Daniel V. Carsey